IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| --- | --- | --- |
| v. | : | No. 04-38-2 |
| ASHLEY ANDREWS | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                             September 1, 2011

In April 2011, Defendant Ashley Andrews filed in the Third Circuit a second motion for release pending appeal pursuant to 18 U.S.C. § 3143(b), which the Third Circuit has referred to this Court for consideration in the first instance. Because Andrews still has not shown his appeal raises a substantial question of law or fact likely to result in reversal, a new trial, a noncustodial sentence, or a sentence of imprisonment less than the time Andrews has already served plus the expected duration of the appeal process, his motion will be denied.

**BACKGROUND**

In September 2006, a jury convicted Andrews of one count of conspiracy to violate federal law, in violation of 18 U.S.C. § 371 (Count I); four counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts II-V); one count of program fraud, in violation of 18 U.S.C. § 666(a)(2) (Count VI); one count of fraudulent claims upon the government, in violation of 14 V.I. Code § 843(4) (Count VII); and one count of inducing a conflict of interest, in violation of 3 V.I. Code §§ 1102, 1103, and 1107 (Count VIII). Andrews was not in custody before his trial, and, following his conviction, he remained on bail pending imposition of sentence.

In December 2010, this case was reassigned to this Court, which did not preside over the trial of this matter, for purposes of sentencing. On January 19, 2011, this Court sentenced Andrews to

151 months of imprisonment, consisting of 151 months on Counts I through VI and two years on Counts VII and VIII, to be served concurrently. Andrews thereafter filed a notice of appeal and a motion for release pending appeal, which this Court denied on March 1, 2011.

In April 2011, Andrews, represented by new counsel, filed the instant motion in the Third Circuit, raising new arguments for release pending appeal. In June 2011, the Third Circuit remanded the matter to this Court for consideration of the motion for bail, response, and reply filed in the Court of Appeals. On August 3, 2011, this Court heard oral argument on Andrews's motion.

**DISCUSSION**

A defendant who has been convicted and sentenced to a term of imprisonment is entitled to release pending appeal only if a court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under [18 U.S.C. § 3142(b) or (c)]; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). The defendant has the burden of proving each of these criteria is met. *United States v. Miller*, 753 F.2d 19, 24 (3d Cir. 1985). To satisfy the "substantial question" requirement, a defendant must show (1) the issue he raises on appeal is significant, and (2) the issue "is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *Id.* at 23; *accord United States v. Smith*, 793 F.2d 85, 88-89 (3d Cir. 1986). The defendant must also show the substantial question is "sufficiently important to the merits that a

contrary appellate ruling is likely to require reversal," or a new trial, a noncustodial sentence, or a reduced sentence of less than the total of the time already served plus the expected duration of the appellate process. *Miller*, 753 F.2d at 23; *United States v. Malik*, No. 08-614, 2010 WL 276323, at *2 (E.D. Pa. Jan. 21, 2010).

In his motion for bail, Andrews argues his appeal raises substantial issues of law likely to result in reversal of his conviction or a new trial on all counts of the Indictment. Andrews argues his conviction on the wire fraud counts must be reversed because the jury instructions permitted the jury to convict him of honest services wire fraud without limiting honest services fraud to schemes involving bribes and kickbacks, as required under *Skilling v. United States*, 130 S. Ct. 2896 (2010). Andrews argues a new trial is also required as to the remaining counts because evidence regarding the invalid honest services theory improperly "spilled over" and tainted his conviction on those counts, and/or because the Government's evidence was insufficient to prove those counts.

The wire fraud statute "criminalizes the use of the . . . wires in furtherance of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *Id.* at 2908 n.1 (quoting 18 U.S.C. § 1343). The honest services statute specifies that, for purposes of the wire fraud statute, "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. In *Skilling*, the Supreme Court held the honest services statute is not unconstitutionally vague, but only insofar as the statute is interpreted to criminalize only "fraudulent schemes to deprive another of honest services through bribes or kickbacks." 130 S. Ct. at 2928-34. Following *Skilling*, a defendant may be convicted of wire fraud for devising a scheme to defraud another of either money or property (money or property wire fraud) or the right to honest services (honest

3

services wire fraud); however, the latter theory is limited to schemes to defraud involving bribes or kickbacks. *See id.* at 2934 (recognizing the validity of alternative wire fraud theories).

In this case, Andrews was charged with both money or property wire fraud and honest services wire fraud. The wire fraud counts of the Second Superseding Indictment, ECF Document 535, charged that Andrews, co-defendant Campbell Malone, and others "devised a scheme and artifice to obtain money and property and to deprive another of the intangible right of honest services, by means of material false and fraudulent pretenses and representations, omissions and concealment of material facts." 2d Superseding Indictment 14. With regard to the money or property wire fraud theory, the Second Superseding Indictment charged that the scheme to defraud "involved securing a no-bid contract for sewer repair work and generating a fraudulent claim for expenses incurred as a result of preparing a proposal for a contract to repair the St. Croix sewer system." *Id.* As to the honest services theory, the Second Superseding Indictment charged that the Defendants

> [d]eprived the Virgin Islands government and its citizens of their right to the honest services of an agent of the Virgin Islands when Ohanio Harris, a territorial officer, obtained an interest in GRM, financial and otherwise, which was in substantial conflict with the proper discharge of Ohanio Harris' duties in the public interest.

*Id.* at 16.

Although the Government pursued both of these alternative theories of wire fraud as to Andrews throughout the trial, and included both theories in its closing argument,[1] the Court did not instruct the jury on the honest services theory. Rather, the case went to the jury on only the money

---

[1] *See* Trial Tr. 115, 140-41, Sept. 14, 2006 (arguing alternative theories of wire fraud as to Andrews). The Government did not argue the honest services theory of wire fraud as to Malone because the Court found there was no evidence Malone was involved in the efforts to corrupt Harris.

or property theory of wire fraud. As part of its instructions, the Court read to the jury a redacted version of the Second Superseding Indictment (the Redacted Indictment), ECF Document 617, which omitted all references to "honest services" in the wire fraud counts, charging only a scheme and artifice to obtain money and property and omitting the allegation that the Defendants deprived the Government and people of the Virgin Islands of their right to Harris's honest services.[2] Redacted Indictment 14-16. Moreover, in instructing the jury on the wire fraud counts, the Court again omitted any reference to "honest services," stating that the first element of the offense required proof "[t]hat the defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by materially false or fraudulent pretenses, representations, promises or omissions." Trial Tr. 80, Sept. 18, 2006; *see also* Jury Charge, ECF Document 633 (instruction regarding "Any Scheme to Defraud"). As to this "scheme to defraud" element, the Court further instructed that

> [f]ederal law protects money and property interests. Money or property interests are commonly referred to as tangible rights, because those are things that you can touch and feel. They include[] money, real property and specific goods and property, goods or possessions.
> . . . What must be proved beyond a reasonable doubt is that the defendant knowingly participated in the scheme to defraud, a scheme that is substantially the same as the one alleged in the indictment.

Trial Tr. 83 Sept. 18, 2006; *see also* Jury Charge (instructions regarding "Interests Protected from Scheme to Defraud" and "Proof of Scheme").

Here, the scheme to defraud alleged in the Redacted Indictment and on which the jury was

---

[2] The Redacted Indictment also omitted honest services wire fraud as an object of the conspiracy charged in Count 1, limiting the conspiracy to commit wire fraud to "knowingly devis[ing] a scheme and artifice to defraud and for obtaining money and property . . . ." Redacted Indictment at 7 ¶ 3. Indeed, the only reference to "honest services" in the Redacted Indictment was the allegation that, as a territorial officer, Harris "had a duty to uphold the laws of the United States and the Virgin Islands; and to provide honest services to the people of the Virgin Islands." *Id.* at 2 ¶ 3.

5

instructed was a scheme to obtain money and property, not a scheme to deprive another of the intangible right to honest services. Thus, because the jury was instructed on only the money or property theory of wire fraud, *Skilling* is inapplicable, and Andrews's assertion of *Skilling* error does not amount to a substantial question of law or fact likely to result in reversal of his conviction on the wire fraud counts.[3] *Cf. United States v. Pelisamen*, 641 F.3d 399, 406-07 (9th Cir. 2011) (upholding a wire fraud conviction where a special verdict form reflected that the jury had convicted the defendant on a money or property theory as well as on an invalid honest services theory).

Andrews argues the Government "is essentially asking this Court to amend the indictment post conviction to remove the honest services from the wire fraud counts." Appellant's Reply 3. As is apparent from both the docket and the trial transcript, however, the Second Superseding Indictment was redacted at the Court's request before the jury was charged.[4] *See* Trial Tr. 126, Sept. 15, 2006 & ECF Docket Entry 616 (reflecting the Court's request for a further redacted indictment); Trial Tr. 45-67, Sept. 18, 2006 (reflecting the Court's reading of the Redacted Indictment to the

---

[3] While the Court did not instruct the jury on the honest services theory of wire fraud, it did refer to "honest services" elsewhere in its instructions. Specifically, the Court characterized the federal claims as "relat[ing] to claims of fraudulent intent or attempts to corruptly deprive the Government of the Virgin Islands of the honest services of an officer or employee of the Government of the Virgin Islands." Trial Tr. 19, Sept. 18, 2006. The Court also characterized the conspiracy claim as alleging a conspiracy or agreement "to commit honest services fraud or wire fraud, or to corruptly influence an agent of the Virgin Islands Government." *Id.* at 72-73; *see also* Jury Charge (instruction regarding "Conspiracy," stating the substantive crimes in the case "are alleged acts of honest services fraud"). Even if these references were sufficient to permit the jury to convict Andrews of the conspiracy count based on a conspiracy to commit honest services fraud, they would not have affected the jury's consideration of the wire fraud counts, as to which the jury was instructed separately. *See Bronshtein v. Horn*, 404 F.3d 700, 713-14 (3d Cir. 2005) (recognizing a jury is presumed to follow the court's instructions regarding a count in returning a verdict on that count).

[4] Although it is not entirely clear from the record why the honest services theory was omitted as to Andrews, the record reflects that the jury was not instructed on this theory as to either Defendant.

jury). Narrowing the Indictment in this manner was permissible. *See United States v. Miller*, 471 U.S. 130, 145 (1985) ("[W]here an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment." (citation omitted)); *United States v. Graffia*, 120 F.3d 706, 710-11 (7th Cir. 1997) ("Narrowing an indictment that charges a conspiracy or scheme to defraud to reflect a smaller version of the same conspiracy or scheme does not require resubmission to the grand jury.").

Even if Andrews had raised a substantial question as to the wire fraud counts, he still would not meet the standard for release pending appeal because he has not shown that his appeal is likely to result in reversal, a new trial, or a noncustodial or sufficiently reduced sentence as to his convictions for program fraud and inducing a conflict of interest, Counts VI and VIII. *See Morison v. United States*, 486 U.S. 1306 (Rehnquist, Circuit Justice 1988) (denying application for release pending consideration of a petition for certiorari because the appellant had not shown his appeal was "'likely to result in reversal' with respect to all the counts for which imprisonment was imposed"). Andrews vaguely argues his conviction must be reversed on these counts because of prejudicial spillover of evidence from the invalid honest services wire fraud counts. Reversal of a defendant's conviction on one count requires reversal on other counts based on prejudicial spillover only when "there was a spillover of evidence from the reversed count that would have been inadmissible at a trial limited to the remaining count[s]" and the spillover was not harmless. *United States v. Riley*, 621 F.3d 312, 325 (3d Cir. 2010) (citation omitted).

Andrews does not identify any evidence admitted at trial with respect to the honest services wire fraud theory that would be inadmissible at a separate trial of the program fraud and inducing

7

a conflict of interest counts. To the contrary, Andrews acknowledges "[t]he [honest services] wire fraud charges significantly overlap with Count VI . . . and Count VIII." Appellant's Reply 6. Because the honest services theory was based on the same conduct underlying the program fraud and inducing a conflict of interest counts, evidence regarding the honest services theory would have been admissible as to these other counts. *Compare* 2d Superseding Indictment 16 ¶ k (Counts II-V) (alleging an honest services theory based on Andrews's role in giving Harris an interest in GRM "which was in substantial conflict with the proper discharge of . . . Harris' duties in the public interest"), *with id.* at 20 (Count VIII) (charging Andrews with inducing Harris "to have an interest[,] financial and otherwise, which was in substantial conflict with the proper discharge of . . . Harris' duties in the public interest" by causing Harris "to serve as president of GRM and act on behalf of GRM at a time when GRM sought contracts from . . . Harris' employer, the Government of the Virgin Islands"), *and id.* 18 (Count VI) (charging Andrews with program fraud for giving Harris a share of GRM's profits with intent to influence and reward Harris for using his position to influence the award of the sewer repair contract). Andrews's assertion of prejudicial spillover thus does not amount to a substantial question of law or fact.[5] Because Andrews has failed to raise a substantial

---

[5] Andrews also argues his appeal will challenge the sufficiency of the evidence on Counts VI and VIII, but this argument—which, at oral argument, Andrews's counsel represented was raised in an abundance of caution—does not present a substantial question. Andrews's assertion that the Government failed to present any evidence that Harris could influence the award of the sewer contract is contradicted by Harris's own testimony regarding his role as the Governor's only special assistant in St. Croix, his close working relationship with and wide access to the Governor, and his role in introducing Andrews and his business partners to the Governor and arranging meetings between Andrews's team and the Governor and/or the agencies responsible for the sewer repairs. Trial Tr. 167-70, 243-49, 264-65, Sept. 6, 2006; *see also* Trial Tr. 40, Sept. 7, 2006 (acknowledging "[t]he impact and effect of a special assistant calling a department head or agency has more import than, let's say, a clerk calling a department head or agency, or another person in a department calling the commissioner"). Andrews's argument regarding the illegality of cost plus contracts likewise dose not present a substantial question.

question as to Counts VI and VIII, the Court need not address his arguments for reversal of the remaining counts of the Indictment.

Andrews does raise one valid sentencing issue, noting the 151-month sentence imposed on Counts I through VI exceeds the five-year statutory maximum term of imprisonment on Count I and the 10-year statutory maximum on Count VI. This error was inadvertent. At the sentencing hearing, this Court discussed the applicable statutory maximum terms of imprisonment for all counts, including the five-year maximum on Count I, the 20-year maximum on Counts II through V, and the 10-year maximum on Count VI. Sentencing Hr'g Tr. 100, Jan. 19, 2011. However, the Court then imposed a 151-month sentence on Counts I through VI together rather than imposing a separate sentence on Counts I and VI to account for the lower statutory maximum sentences for those Counts. Had Andrews objected at the sentencing hearing, this Court would have imposed a 5-year term of imprisonment on Count I and a 10-year term of imprisonment on Count VI, to run concurrently with the 151-month sentence on Counts II through V. Because the 151-month sentence is below the statutory maximum on Counts II through V, this error on Counts I and VI does not affect Andrews's overall sentence. Nevertheless, the sentence on Counts I and VI must be amended in accordance with the applicable statutory maximums on those Counts. *See United States v. Dunston*, 414 F. App'x 488, 492 (3d Cir. 2011) (remanding case for amendment of a sentence exceeding the statutory maximum on a conspiracy count even though the overall sentence was not affected). However, because correction of this error will not change Andrews's overall sentence, it is not a basis for release pending appeal.

For the reasons set forth above, Andrews's motion for release pending appeal is denied. An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J.